# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN RAY BRUMMETT, JR., | Case No. 1:21-cv-00086-ADA-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| LOPEZ, *et al.*, | (ECF No. 59) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

**I.      Introduction**

Plaintiff Melvin Ray Brummett, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds against Defendant Martinez ("Defendant") for retaliation in violation of the First Amendment and deliberate indifference to risk of harm in violation of the Eighth Amendment.

Currently before the Court is Defendant's motion for summary judgment, filed January 12, 2023.  (ECF No. 59.)  Plaintiff filed his opposition on March 7, 2023, (ECF No. 72), and Defendant filed a reply on March 22, 2023, (ECF No. 73).  The motion is fully briefed.  Local Rule 230(l).

For the reasons set forth below, the Court recommends that Defendant's motion for summary judgment be denied.

///

## II. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S.

at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III. Discussion**

    **A. Undisputed Material Facts ("UMF")**[1]

1. At all relevant times, Plaintiff Melvin Ray Brummett, Jr. was housed at Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California. (Second Am. Compl., ECF No. 45.)

2. At all relevant times, Defendant Martinez was employed as a Laundry Materials & Stores Supervisor I (M&SS-1) at SATF. He worked in this role from October 19, 2019 to March 7, 2021. Defendant still works at SATF. Since March 8, 2021, he has worked as a

---

[1] *See* Defendant's Statement of Undisputed Facts. (ECF No. 59-2.) Plaintiff did not comply with the rules in preparing his opposition, including by failing to reproduce Defendant's Statement of Undisputed Facts and providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts, or providing a statement of disputed facts. Local Rule 260(b). As a result, Defendant's Statement of Undisputed Facts is accepted except where brought into dispute by Plaintiff's verified second amended complaint or opposition to the summary judgment motion, both signed under penalty of perjury. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III. Discussion**

    **A. Undisputed Material Facts ("UMF")**[1]

1. At all relevant times, Plaintiff Melvin Ray Brummett, Jr. was housed at Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California. (Second Am. Compl., ECF No. 45.)

2. At all relevant times, Defendant Martinez was employed as a Laundry Materials & Stores Supervisor I (M&SS-1) at SATF. He worked in this role from October 19, 2019 to March 7, 2021. Defendant still works at SATF. Since March 8, 2021, he has worked as a

---

[1] *See* Defendant's Statement of Undisputed Facts. (ECF No. 59-2.) Plaintiff did not comply with the rules in preparing his opposition, including by failing to reproduce Defendant's Statement of Undisputed Facts and providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts, or providing a statement of disputed facts. Local Rule 260(b). As a result, Defendant's Statement of Undisputed Facts is accepted except where brought into dispute by Plaintiff's verified second amended complaint or opposition to the summary judgment motion, both signed under penalty of perjury. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

Canteen M&SS-1. (Declaration of A. Martinez ("Martinez Decl."), ¶ 1.)

3. In May of 2020, Plaintiff was assigned as an inmate worker to the F Facility laundry. (Declaration of J. Barba ("Barba Decl."), ¶ 3 and Ex. 2, Plaintiff's Inmate Assignment History.)

4. Plaintiff admits that it is a condition of work at the F Facility Laundry to not steal. "Any stealing is ground for losing the job." Plaintiff admits that not following assigned tasks is also grounds for reassignment. (Deposition of Plaintiff ("Brummett Depo."), ECF No. 66, pp. 9–10.)

5. Inmate Steven Moore, CDCR# AK-2727, declares that on or about May 24, 2020, he and inmate Walter Slone, CDCR# F-32883, were informed by Defendant A. Martinez that Plaintiff had told on inmate Slone for stealing new clothes, and on or about May 26, 2020, inmate Moore told Plaintiff prior to work what Defendant had done. (Declaration Under Penalty of Perjury of Steven Moore, CDCR# AK-2727, ECF No. 68, p. 17.)

6. Plaintiff declares that on or about May 26, 2020, inmate Moore informed Plaintiff that Defendant had told both inmates Moore and Slone that Plaintiff had snitched on inmate Slone for stealing. (Second Am. Compl, ECF No. 45, p. 4, ¶ 3; Plaintiff's Opposition to Motion for Summary Judgment, ECF No. 68, p. 1, ¶ 1; Brummett Depo. at 25:1–11 (internal pagination).)

7. Defendant denies telling inmate Slone and inmate Moore that Plaintiff gave him information about them stealing from the laundry. (Martinez Decl., ¶ 8.)

8. On May 26, 2020, Defendant's log entry for the laundry facility sets forth that he caught "Brummett taking a few new towels." On May 28, 2020, Defendant's entry in the laundry log sets forth "Noticing Brummett has been showing anger and has been stubborn towards tasks asked of him. Told Chavez about it." (Martinez Decl., ¶ 2 and Ex. A, Laundry Log; Barba Decl., ¶ 2 and Ex. 1, Laundry Log.)

9. Plaintiff claims inmate Slone "socked [him] on the side of the head" on or about May 26, 2020. Plaintiff admits that he did not file a complaint, notify any correctional staff, or report the alleged incident to any correctional staff or inmates about any altercation with

inmate Slone. Further, he admits he did not seek treatment or medication, admits no one saw the alleged hit, and admits that no one saw any injury. (Brummett Depo., ECF No. 66, pp. 11–13; Opp'n Brief, ECF No. 68, p. 2.)

10. Plaintiff claims that on May 27, 2020 there was a conversation in the yard about the snitching, but it never became physical, and there was no injury. (Second Am. Compl., ECF No. 45, p. 9, ¶ 5; Brummett Depo., ECF No. 66, p. 14.)

11. Plaintiff was reassigned to a different job assignment on June 11, 2020. (Barba Decl., ¶¶ 3–4 and Exs. 2–3.)

12. Plaintiff filed a 602 grievance on May 26, 2020 and admits he was able to fully pursue the grievance process. (Second Am. Compl., ECF No. 45, pp. 4, ¶ 5; 8, ¶ 5; ECF No. 68, pp. 36–45)

**B.     Eighth Amendment – Deliberate Indifference**

1.     Parties' Positions

Defendant contends that Plaintiff has not alleged any physical injury or even a *de minimis* physical injury as a result of the alleged violation of his Eighth Amendment rights. Plaintiff claims, without any evidence except for his self-serving testimony, that inmate Slone "socked [him] on the side of the head," but he did not seek treatment or medication, no one saw the alleged hit, and no one saw any injury. UMF No. 9. Plaintiff also that the alleged May 27, 2020 discussion in the yard did not become physical or result in any injuries. Plaintiff has provided evidence of only theoretical and speculative risks of harm, which cannot establish a constitutional claim. Because Plaintiff has not shown a more than *de minimis* physical injury, his claim fails under 42 U.S.C. § 1997e(e).

In opposition, Plaintiff argues that when inmate Slone socked him in the side of his head, Plaintiff was almost knocked out, and he was left with a knot on the side of his head. This is an injury that is more than *de minimis*. The Court must accept the version of facts most favorable to Plaintiff, the non-moving party, in ruling on Defendant's motion for summary judgment.

In reply, Defendant argues that Plaintiff's opposition merely restates his allegations from the complaint, offering only speculative beliefs and unsupported conclusory allegations.

5

2. <u>Analysis</u>

Defendant misconstrues the legal standards for both the physical injury requirement of both 42 U.S.C. § 1997e(e) and a claim for deliberate indifference on the basis that an inmate is advertised as a snitch to other inmates.

Section 1997e(e) provides that a prisoner may not obtain compensatory damages based on mental or emotional injury alone, without a showing of a more than *de minimis* physical injury from the particular constitutional violation. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).

In this action, there is no indication that Plaintiff seeks damages solely on the basis of a mental or emotional injury. With respect to his Eighth Amendment claim, Plaintiff specifies the following as his injury: "Martinez caused Brummett to have a physical altercation with Inmate, Slone, and racial confrontation on the recreation yard with several other black inmates." (ECF No. 45, p. 8.) Further, Plaintiff states the following in his request for relief: "Brummett respectfully demands a Jury Trial were it will be determined whether he is entitled to 'compensatory damages,' 'punitive damages,' or 'nominal damages.'" (*Id.* at 13 (unedited text).)

Further, it is far from undisputed that Plaintiff suffered no physical injuries, *de minimis* or otherwise, as a result of Defendant advertising him as a snitch to inmates Slone and Moore. Plaintiff testified under penalty of perjury at his deposition, and declared again under penalty of perjury in his opposition brief, that after Defendant told Slone that Plaintiff snitched, Slone socked him in the side of the head and left a knot. UMF No. 9. In addition, inmate Moore's declaration, also signed under penalty of perjury, supports that Plaintiff had a heated argument with Slone on the day in question, and inmate Moore walked away to avoid any further involvement in the interaction. (ECF No. 68, p. 17.) While Plaintiff's statements may be self-serving, they are not conclusory or lacking in detailed facts. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create

6

a genuine issue of material fact."). Plaintiff specifically explains that he did not report the incident with Slone for fear of being labeled a snitch (again), as it would have been obvious to inmate Slone that Plaintiff was the one who reported him for any assault. (ECF No. 68, p. 4.)

Even assuming that Defendant is correct that Plaintiff suffered no physical injuries, Defendant has cited to no authority, and the Court is aware of none, that requires a showing of physical injury to state a claim for deliberate indifference after an officer labels an inmate a snitch in front of other inmates. Rather, the Ninth Circuit and other Courts in this District have found that physical harm *or* threats of physical harm are sufficient to demonstrate that a defendant was deliberately indifferent. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989); *Morgan v. MacDonald*, 41 F.3d 1291, 1294 (9th Cir. 1994); *Green v. Chamberlain*, 2019 WL 3302346, at *7 (E.D. Cal. Jul. 22, 2019). Plaintiff declares that he was threatened with retaliation as a result of Defendant informing inmates Moore and Slone that Plaintiff was a snitch when he was confronted on May 27, 2020 by a group of inmates, which was witnessed by inmate Smith. UMF No. 10; (ECF No. 68, p. 34).

Finally, the "undisputed" facts themselves demonstrate a dispute of fact regarding whether Defendant ever advertised Plaintiff as a snitch to inmates Slone and Moore in the first instance. While Defendant "denies telling inmate Slone and inmate Moore that [Plaintiff] gave him information about them stealing from the laundry," UMF No. 7, Plaintiff has submitted his own testimony and that of inmate Moore in contradiction, UMF Nos. 5, 6. Summary judgment on this claim would therefore be inappropriate on the record before the Court.

As there remains a dispute of fact regarding key elements of this claim, nothing in section 1997e(e) precludes Plaintiff from attempting to recover for compensatory, punitive, or nominal damages that are not based on mental or emotional injuries, Plaintiff has declared under penalty of perjury that he suffered physical injuries, and Plaintiff submitted other evidence—undisputed by Defendant—that he experienced threats of retaliation from other inmates. Defendant's motion for summary judgment as to Plaintiff's Eighth Amendment claim is denied.

///

///

**C.     First Amendment – Retaliation**

1.     Parties' Positions

Defendant argues that he denies telling inmates Slone and Moore that Plaintiff was a snitch, and Plaintiff cannot show that Defendant took any adverse action against Plaintiff for an alleged threat. Rather, the laundry log shows that Plaintiff tried to steal new towels on May 26, 2020, and was stubborn regarding tasks on May 28, 2020, each providing grounds to be removed from the job assignment, and Plaintiff was reassigned shortly afterward. Even if Defendant's alleged threat to remove Plaintiff from the laundry facility and Plaintiff subsequent reassignment were sufficient to be considered adverse action against Plaintiff, Plaintiff has not shown a chilling effect on Plaintiff's ability to pursue the grievance process, because Plaintiff later filed a 602 grievance and was able to fully pursue the grievance process.

In opposition, Plaintiff contends that he does not have to show that his speech was actually inhibited or suppressed, only that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities. Defendant's self-serving declaration states that he witnessed Plaintiff trying to steal new towels and being stubborn regarding tasks, but if this were true Plaintiff would have received an RVR for either offense. The reason for Plaintiff's job removal is vigorously contested and is a genuine issue as to a material fact.

In reply, Defendant argues that mere speculation that a defendant acted out of retaliation is not enough. The record supports multiple grounds for Plaintiff's job reassignment. Further, Plaintiff's reassignment shows that he suffered no loss in wages, because Plaintiff was not eligible for pay at the laundry facility, but upon reassignment as a Library Clerk, Plaintiff was compensated. As Plaintiff cannot prove retaliatory intent or any damages, this claim fails.

2.     Analysis

As with Plaintiff's Eighth Amendment claim, there remains a material dispute of fact regarding Plaintiff's First Amendment retaliation claim. Defendant argues that there were legitimate reasons for Plaintiff's reassignment from the laundry facility. UMF No. 8. Meanwhile, Plaintiff contends that it was only after he informed Defendant that he planned to file

8

a grievance against him that Defendant threatened Plaintiff with job reassignment and began to record justifications for that reassignment. (*See* ECF No. 68.)

The parties' arguments regarding the veracity or admissibility of the laundry logs supporting Defendant's contentions are inappropriate for the summary judgment stage. While it is true that Plaintiff must do more than attack the credibility of Defendant's evidence to defeat summary judgment, *see Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983), Plaintiff has done so. Plaintiff provided his own testimony, under penalty of perjury, that it was only after Plaintiff informed Defendant that he intended to file a grievance against Defendant that Defendant threatened to remove Plaintiff from his job assignment and began to record grounds for Plaintiff's job reassignment in the laundry log. (ECF No. 45, p. 5; ECF No. 68, p. 2.)

Defendant's argument that Plaintiff suffered no chilling effect is also unavailing. As Plaintiff correctly argues, Plaintiff need only allege that he suffered some other harm that is "more than minimal," even if his First Amendment rights were not actually chilled. *See Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Rhodes v. Robinson*, 408 F.3d 559, 568 n.11 (9th Cir. 2005). Further, even "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect. *Brodheim*, 584 F.3d at 1270. Defendant's only argument that Plaintiff did not suffer some other harm that was "more than minimal" appears to be that Plaintiff was eventually reassigned to a job that was compensated, where he was previously not eligible for pay. (ECF No. 73, p. 5.) However, this argument is not persuasive. Eeven if true that Plaintiff was eventually reassigned to a compensated job, at the time Plaintiff was contemplating filing his grievance against Defendant, there was no indication that he would later receive a "better" job assignment if he was removed from the laundry facility. To the extent Defendant is arguing that Plaintiff did not suffer any economic damages from his removal and reassignment, that issue is not appropriate for the instant summary judgment motion.

As there remains a dispute of fact regarding key elements of this claim, Defendant's motion for summary judgment as to Plaintiff's First Amendment claim is denied.

**D.     Qualified Immunity**

      1.     Parties' Positions

Defendant argues that he is entitled to qualified immunity as to Plaintiff's First Amendment claim for retaliation,[2] because there is no constitutional right to a particular inmate job assignment, and even if true that Defendant did somehow violate the law, no reasonable officer in Defendant's position would believe that removing an inmate worker due to poor job performance would be a violation of any constitutional rights.  (ECF No. 59-1, p. 8.)

In opposition, Plaintiff contends that he has never argued that he was entitled to any particular job assignment, only that he was removed from his job assignment in retaliation for having submitted a staff complaint against Defendant.  (ECF No. 68, p. 13.)  Any reasonable person would have known that these actions were extremely unlawful, and that officials can be on notice that their conduct violations established law even in novel circumstances, and courts need not have held that fundamentally similar conduct was unlawful to defeat qualified immunity.

In reply, Defendant argues again that because Plaintiff has not met his burden of establishing that Defendant violated a clearly established right, and Defendant could have reasonably believed that his conduct—removing an inmate worker due to poor job performance who was subsequently assigned to another work assignment—was lawful, he is entitled to qualified immunity.

      2.     Legal Standard

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citations omitted).

---

[2] Defendant did not argue that he is entitled to qualified immunity as to Plaintiff's Eighth Amendment claim. Accordingly, the Court does not address Plaintiff's arguments with respect to qualified immunity regarding his Eighth Amendment claim.

10

To determine if an official is entitled to qualified immunity the court uses a two-part inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. *Saucier*, 533 U.S. at 200. A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Tortu v. Las Vegas Metro. Police Dep't.*, 556 F.3d 1075, 1085 (9th Cir. 2009)).

It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton*, 571 U.S. at 6 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). A right is clearly established where it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hines v. Youseff*, 914 F.3d 1219, 1229 (9th Cir. 2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In determining if the right is clearly established, the court must consider the law, "in light of the specific context of the case, not as a broad general proposition." *Hines*, 914 F.3d at 1229 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

3. <u>Analysis</u>

As discussed above, there remains a material dispute of fact as to whether Plaintiff's First Amendment right against retaliation was violated. While Defendant contends that Plaintiff was reassigned due to poor job performance, Plaintiff claims that the alleged poor job performance was only recorded after he informed Defendant of his intention to file a grievance against Defendant. In *Bruce v. Ylst*, the Ninth Circuit explained that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." 351 F.3d 1283, 1289 (9th Cir. 2003). On the

instant record, there is sufficient ambiguity for a jury to find that Defendant acted with a retaliatory motive, even if it is also true that Plaintiff was performing poorly in his job assignment or that Plaintiff received more compensation at his next job assignment. *Id.* (prison official who uses valid procedure as subterfuge to obscure retaliation "cannot assert that [his action] served a valid penological purpose, even though [the prisoner] may have arguably ended up where he belonged.") (emphasis removed).

Defendant may nevertheless be entitled to qualified immunity if the right at issue was not "clearly established at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735.

A prisoner's general right against retaliatory punishment was clearly established well before 2020, when the events at issue in this action occurred, *e.g.*, *Rhodes*, 408 F.3d at 569, and there is no dispute that Plaintiff was engaged in protected conduct. Though it remains disputed whether Plaintiff was subject to the type of adverse action that would chill speech, or whether Defendant acted solely with a retaliatory motive, "[f]or purposes of summary judgment on the question of qualified immunity . . . we must presume the facts to be most favorable to the non-moving party." *DiRuzza v. Cty. of Tehama*, 206 F.3d 1304, 1314 (9th Cir. 2000). Thus, assuming Plaintiff's version of events is true, Defendant cannot claim that he could have *reasonably* believed his conduct was lawful because he was advancing a legitimate penological goal. Plaintiff alleges that he never performed poorly at his job in the laundry facility, and Defendant only recorded such poor performance in retaliation and an attempt to remove Plaintiff from his job assignment.

In 2003, the Ninth Circuit followed other circuits and clearly established that prison officials may not abuse a valid procedure "as a cover or a ruse to silence and punish" an inmate. *Bruce*, 35 F.3d at 1289. This holding was reaffirmed in 2016, four years prior to the events in this action. *Shepard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016). On the version of facts before the Court, Plaintiff's right against retaliation was therefore "sufficiently clear that a reasonable official" in Defendant's position would have understood "that what he [was] doing violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

///

Accordingly, Defendant is not entitled to qualified immunity with respect to Plaintiff's First Amendment claim at this stage.

### IV.   Conclusion and Recommendations

For the reasons explained above, the Court finds that Defendant is not entitled to summary judgment as to Plaintiff's Eighth Amendment or First Amendment claims, and Defendant is not entitled to qualified immunity as to Plaintiff's First Amendment claim.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment, (ECF No. 59), be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 6, 2023**            /s/ *Barbara A. McAuliffe*
                                          UNITED STATES MAGISTRATE JUDGE

13